UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS THIBAULT, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-0200** |
| **BELLSOUTH TELECOMMUNICATIONS, INC. ET AL.** | **SECTION: "S" (2)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Louis Thibault, Jr.'s motion for partial summary judgment is **DENIED**.  (Document #118.)

**IT IS FURTHER ORDERED** that BellSouth Telecommunications, Inc.'s motion for summary judgment is **GRANTED**.  (Document #119.)

**IT IS FURTHER ORDERED** that Directional Road Boring, Inc.'s motion for summary judgment is **GRANTED**.  (Document #122.)

**IT IS FURTHER ORDERED** that the motion for summary judgment of Robert J. Parker d/b/a Parker Communications, Parker Communications, Inc., Parker Communications, LLC, and Robert W. Parker is **GRANTED**.  (Document #123.)

**IT IS FURTHER ORDERED** that, as they pertain to the motions for summary

judgment, Louis Thibault, Jr.'s motion to exclude and strike income tax returns is **DENIED**, and the motion to exclude the report of James L. White, CPA and Bernard & Franks, a Corporation of Certified Public Accountants, is **GRANTED**. (Document #117.)[1]

## I. BACKGROUND

Louis Thibault, Jr. was hired as a "splicer" by Robert J. Parker d/b/a Parker Communications (Parker) to repair telecommunication wiring damaged as a result of Hurricane Katrina. Thibault was advised that he would receive supplies and work under the supervision of Directional Road Boring, Inc. (Directional) and BellSouth Telecommunications, Inc. (BellSouth). Thibault reported to the BellSouth construction yard on Airline Drive in Jefferson Parish on October 3, 2005.

Thibault alleges that the offer of employment included six months of work at $68 per hour for 84 hours per week and the furnishing of a paid location for a motor home. Thibault was required to complete a daily time sheet and return it to Directional at the end of each day to be signed by supervisors from Directional and BellSouth. Thibault was paid weekly by Parker. On January 8, 2006, Thibault was discharged. His last pay check did not include overtime or payment for the time remaining on the expected six months of employment.

After making a demand for the amount allegedly due, Thibault filed a petition for damages in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, against

---

[1] The court need not address the motion to strike as it pertains to the documents and testimony at trial.

BellSouth, Parker,[2] and Directional, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C § 216, state-law breach of contract, and failure to pay wages under La. Rev. Stat. 23:631-32.  BellSouth removed the case to federal court with the consent of Parker and Directional, asserting federal question jurisdiction under § 216.  The court denied Thibault's motion to remand.

Thibault filed a motion *in limine* to exclude and strike his income tax returns; a motion in *limine*  to  exclude the testimony of James L. White CPA and Bernard & Franks, a corporation of certified public accountants; and a motion for partial summary judgment on the issue of overtime pay.  BellSouth, Directional, and Parker filed motions for summary judgment on grounds that Thibault is not an employee, but an independent contractor; he is not covered by the provisions of the Louisiana Wage Payment Act; and there was no contractual guarantee regarding the term of the splicing work.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of

---

[2] The plaintiff sued Parker d/b/a Parker Communications in his individual capacity on December 7, 2006.  Parker Communications was incorporated in South Carolina on January 30, 2006 and is now known as Parker Communications, Inc.  Robert Parker, the president of Parker Communications, Inc., consented to the removal to federal court individually and on behalf of Parker Communications.

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B. FLSA**

Thibault contends that he is entitled to overtime compensation for hours worked in excess of 40 hours per week, pursuant to the FLSA, 29 U.S.C. § 207. The defendants contend that Thibault is an independent contractor, not an employee, and therefore not covered by the FLSA.

"The definition of employee under the FLSA is particularly broad." Hopkins v. Cornerstone America, 2008 WL 4542491 *2 (5th Cir. 2008). To determine if a worker is an employee, the court focuses on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." Id. The court focuses on five non-exhaustive factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the

permanency of the relationship." Id. No factor is determinative, and each is applied to gauge the economic dependence of the alleged employee. Id.

The material facts are essentially undisputed. The parties present the following facts in support of the factors to determine Thibault's employment status.

**1. Control**

The contract splicers reported to a special yard on Airline Drive to receive their instructions, and the BellSouth employees reported to Duncan yard in Kenner. Chris Floyd, a BellSouth first-level supervisor, received his instructions for the next day's work each afternoon at BellSouth's Duncan yard. The instructions were distributed to a ten-man crew by Directional supervisors, Dave DeSanto and Mike Allen. Parker's supervisor, Dan Keener, initially met the contract splicers and confirmed that they would work 84 hours per week at $68 per hour, but Parker exercised no control over how assignments were made. BellSouth and Directional provided verbal instructions and blueprints regarding the particular daily assignment. BellSouth and Directional supervisors checked to see if the contract splicers were present on the job, but they did not check the splicers' work.

The contract splicers attended a daily safety meeting, then selected the materials needed for the day from the yard. The contract splicers, as well as the BellSouth employees, worked a twelve-hour day, which was dictated by the BellSouth employees' union contract. They returned to their respective yards at 7:00 p.m. and filled out time sheets. The BellSouth employees entered the information into a computer, and the contract employees presented hand-written time sheets to Floyd for his signature. Parker's representative collected the time sheets, and

Parker issued payment based on the number of hours reflected on the time sheets.

### 2. Investment

In September 2005, Parker contacted Bill Peek to perform contract work in the New Orleans area. The contract splicers were required to provide their own tools, equipment, and a bucket truck to perform the work. Peek spoke to Thibault about the opportunity, and Thibault decided to go to New Orleans, even though he had never worked as a splicer. Thibault borrowed some of the tools from Peek and purchased safety equipment and additional tools for $400. He also obtained the use of a bucket van in exchange for fixing the vehicle. Thibault drove his motor home, in which he would live while in New Orleans, and towed the bucket van. Thibault arrived in New Orleans on October 3, 2005. For the first two weeks, Thibault parked his motor home in a lot east of the yard. Thereafter, he paid $750 per month to park at a trailer park.

### 3. Worker's opportunity for profit and loss

Thibault's compensation and number of hours worked on this job were determined by the various contracts among BellSouth, Parker, and Directional. Thibault, however, controlled his expenses in order to maximize his profit. The opportunity for profit depended on each splicer's interest in seeking work with various companies throughout the country.

### 4. Skill and initiative

Splicing work requires specialized skill. Thibault relied on Peek to train him on-the-job and solicited advice from other members of his crew. Thibault's initiative on the job was limited to the task before him.

**5. Permanency**

The splicing work performed after Hurricane Katrina was temporary, and none of the contract splicers worked exclusively for the defendants. The nature of splicers' work in the industry is to move from project to project and from company to company as opportunities arise. This was Thibault's first experience as a contract splicer, and he did not intend to remain in the field for more than seven or eight months. He owned a company, K & L Sales, and intended to return to Delaware to run his business full time. When Thibault was laid off as a contract splicer, Directional offered him a job as a splicer, and he declined. After leaving New Orleans, Thibault returned to his business in Delaware and has not performed work as a splicer since then.

**6. Other factors**

When Thibault arrived on the job, he filled out W-9 and I-9 forms and completed a "Subcontractor Information Sheet." On the W-9 form, Thibault listed his business name as K & L Sales. Thibault received checks in his own name until November 7, 2005, when he requested that Parker make his checks payable to his company, K & L Sales.

As in most employee-status cases, there are facts weighing in favor of employee status and independent contractor status. See Carrel v. Sunland Construction, Inc., 998 F.2d 330, 334 (5th Cir. 1993). Weighing in favor of employee status are the facts that the defendants dictated Thibault's schedule, his hourly rate, and the number of hours he worked. The remaining factors, however, weigh in favor of independent-contractor status. Thibault worked as a splicer only on this one occasion, and expressed no intent or understanding that the position was permanent. Thibault could have moved from project to project performing work as a splicer for other

companies as the opportunity arose if he wanted to.  However, he returned to his business in Delaware.  Additionally, he requested that Parker pay his company for the hours that he worked as a splicer.  In his deposition, Thibault described the specialized work he performed involving large phone cables with as many as 7,400 wires going in and out of terminals.  Although Thibault was not a trained splicer when he arrived in New Orleans, he worked closely with Peek, who introduced him to the job and provided him with the necessary training.  The defendants provided supervisors to check that the splicers were working in their assigned areas and to collect their time sheets and forward them to Parker.  However, the manner in which the splicers performed their work was not supervised.  As a requirement for the position, Thibault arrived with the equipment, tools, and bucket van, albeit mostly borrowed, to perform the job.  BellSouth provided these items for its own employees, but not for contract splicers.

Accordingly, Thibault's status as a splicer is consistent with that of an independent-contractor.  Because Thibault is in business for himself, not economically dependent upon the defendants, he does not meet the definition of employee under the FLSA.  Thibault's motion for partial summary is denied, and the defendants' motions for summary judgment are granted.

**C. Breach of contract**

Thibault contends that the defendants breached the contract by which they guaranteed him six months of work and the furnishing of a paid location for his motor home.  He seeks wages due for the 12 weeks remaining under the employment contract and three months of rent to park his motor home.  The defendants argue that there is no evidence that Parker, Directional or BellSouth guaranteed that the splicing work would be available for any set term or that they

would pay Thibault's expenses.

"A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code. art 1927. The party asserting a contract has the burden of proving the existence of the contract. See J. Caldarera & Co., Inc. v. Louisiana Stadium Dist., 750 So.2d 284, 288 (La. Ct. App. 1999).

To support his claim, Thibault points to the one-year, service agreement between BellSouth and Directional, the subcontract agreement between Parker and Directional incorporating the same terms as the service agreement, Chris Floyd's employment as construction manager at the Kenner yard for at least nine months, Peek's testimony that there was at least six months of work on the telephone cables, Ron Baker's work as a splicer out of the Kenner yard for three months longer than Thibault, and an e-mail advising that the hourly rate would be reduced effective May 1, 2006, and projecting four or five months of additional work.

This circumstantial evidence does not specifically address Thibault's contention that he was hired for a fixed term of six months or promised a paid location for his motor home. Robert Parker testified that it is commonly known that storm work is temporary, and there is no guarantee how long it will last. Further, shortly after Thibault was terminated from the job obtained through Parker, Directional offered him employment. Thibault declined the offer and returned to Delaware.

Thibault has not met his burden of putting forth evidence to show a genuine issue for trial

on the breach of contract claim.  See  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986) (The burden is on the non-movant to produce evidence of the existence of a genuine issue for trial.). Accordingly, there are no disputed issues of material fact, and the defendants are entitled to judgment as a matter of law on the breach of contract claim.

**D.  Louisiana Wage Payment Statutes, La. Rev. Stat. 23:631 *et seq.***

Thibault seeks penalties and attorney's fees under the Louisiana Wage Payment Statutes for failure to pay him overtime and wages for the time remaining under his employment contract.[3] The defendants contend that the Louisiana Wage Payment Statutes, like the FLSA, are designed to protect employees, not independent contractors.

The application of La. Rev. Stat. 23:631 *et seq*. to the present case depends on whether Thibault is an employee or an independent contractor.  Glover v. Diving Serv. Int'l, Inc., 577 So.2d 1103, 1106 (La. Ct. App. 1991).  "Whether an individual is an employee or an independent contractor . . . depends primarily on the degree of control that the principal retains

---

[3]  Louisiana Revised Statute 23:631 states as follows:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, or on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

In order for an employer to be liable for penalty wages, the employer must have been motivated by bad faith in failing to pay wages or must be found to have acted in an arbitrary or unreasonable manner.  See a. Rev. Stat. 23:632; Barlett v. Doctor's Hosp. of Tioga, Inc., 415 So.2d 635 (La. Ct. App. 1982).

in the contract over the employee's work." Reynolds v. Paulson, 871 So.2d 1215, 1218 (La. Ct. App. 2004).  Moreover, "where there is no withholding of taxes or Social Security deductions, then the relationship is that of a principal-independent contractor, and not that of an employer-employee."  Knapp v. The Management Company, 476 So.2d 567, 569 (La. Ct. App. 1985).

As discussed above, BellSouth contracted with Directional to perform the splicing operations, and Directional contracted with Parker to hire the splicers.  On October 5, 2005, Thibault filled out Parker's "Subcontractor Information" form and a W-9, "Request for Taxpayer Identification Number and Certification."  Thibault then directed Parker to change the name on his checks to K & L Sales, Inc. and provided the federal tax identification number for the company.  For the years 2005 and 2006, Parker filed Forms 1099-MISC indicating "Nonemployee compensation."  No federal or state income tax was withheld.  For 2005 and 2006, K & L Sales, Inc. issued Form W-2 Wage and Tax Statements, indicating that K & L Sales, Inc. paid Thibault wages and withheld income and social security taxes.

The lack of salary withholdings by Parker indicates that Thibault was an independent contractor rather than an employee.  See Reynolds v. Paulson, 871 So.2d at 1222.  Moreover, the factors discussed above concerning the control over the performance of the job, the investment in tools, and the temporary nature of the job support Thibault's status as an independent contractor.  As an independent contractor, he is not entitled to the protections of the Louisiana Wage Payment Statutes.

Because there are no genuine issues of material fact underlying the business relationship between the defendants and Thibault, the defendants are entitled to judgment as a matter of law

11

on Thibault's claim under the Louisiana Wage Payment Statutes.


New Orleans, Louisiana, this  10th  day of November, 2008.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**