UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS THIBAULT, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-0200** |
| **BELLSOUTH TELECOMMUNICATIONS, INC. ET AL.** | **SECTION: "S" (2)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the "Motion for Partial Summary Judgment by BellSouth Telecommunications, Inc. and Directional Road Boring, Inc." is **DENIED**. (Document #175.)

**IT IS FURTHER ORDERED** that Robert J. Parker d/b/a Parker Communications' motion for summary judgment is **GRANTED**. (Document #180.)

### I. BACKGROUND

BellSouth Telecommunications, Inc. (BellSouth) and Directional Road Boring, Inc. (Directional) entered a "Services Agreement" whereby Directional furnished services that mostly consisted of splicing telephone wires that had been damaged by Hurricane Katrina. Directional entered a "Subcontract Agreement" with Robert J. Parker d/b/a Parker Communications (Parker)

to perform splicing of damaged telephone lines of BellSouth.

Louis Thibault, Jr. was hired as a "splicer" by Parker. Thibault filed a petition for damages in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, against BellSouth, Parker, and Directional, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C § 216, state-law breach of contract, and failure to pay wages under La. Rev. Stat. 23:631-32. BellSouth removed the case to federal court with the consent of Parker and Directional, asserting federal question jurisdiction under § 216. The court held that Thibault's status as a splicer is consistent with that of an independent contractor and dismissed the claim under the FLSA and state law.

After Thibault filed his suit, BellSouth and Directional contacted Parker and requested that he furnish a defense under the "Subcontract Agreement." When Parker declined to furnish a defense, BellSouth and Directional filed a cross-claim against Parker for defense and indemnity. BellSouth and Directional filed a motion for partial summary judgment on the cross-claim, and Parker filed a cross-motion for summary judgment.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce

evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

**B. Whether Parker owes a defense under the subcontract**[1]

BellSouth and Directional contend that Parker is liable for the attorney's fees incurred in the defense of the Thibault litigation because he agreed to furnish a defense under the "Subcontract Agreement" between Directional and Parker. They argue that the language of the subcontract is sufficiently broad to cover Thibault's claims under the FLSA and for breach of contract.

Parker argues that the request for attorney's fees of BellSouth and Directional is outside the scope of the indemnity provision of the "Subcontract Agreement." Parker contends that he entered into the "Subcontract Agreement" to assist Directional in performing the physical task of splicing damaged telephone lines and that the agreement does not cover the administrative act of paying the subcontractors.

"A contract of indemnity is construed in accordance with the general rules governing contract interpretation." Abbott v. Equity Group, Inc., 2 F.3d 613, 626 (5th Cir. 1993). "Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof." Id. A contract is interpreted by determining the common intent of the parties. La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of

---

[1] Because this issue is dispositive, the court does not address Parker's alternative argument that requests for indemnity are frowned upon in claims under the FSLA.

3

the parties' intent." La. Civ. Code art 2046. A word that is susceptible to different meanings must be interpreted as "having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. A provision of the contract must be interpreted in a manner that renders the provision effective, not ineffective. La. Civ. Code art. 2049. Each provision must be interpreted in light of the other provisions "so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code art. 2053.

The "Subcontract Agreement" references the BellSouth "primary contract" and defines the work as including, but not limited to, "copper and fiber splicing." The following sections are relevant to the issue before the court:

> Section 7. <u>Indemnity</u>. Subcontractor [Parker] shall indemnify Contractor [Directional] and Owner [BellSouth], and hold them harmless against claims, liability, litigation, loss, and expenses, including attorneys' fee suffered by Contractor or Owner **as a result of subcontractor's performance or non performance of the <u>Work</u> required by this Agreement**. Subcontractor is obliged to indemnify Contractor and Owner under this paragraph **for all events caused or partly caused by Subcontractor's negligence, wrongdoing, or other fault** even if Contractor or Owner, or Contractor and Owner, should also be partially at fault. This indemnity provision shall not, however, apply to claims, liability, litigation, loss, or expenses caused solely by the fault of Contractor or Owner, or Contractor and Owner, unless permitted under the laws of the state governing this Agreement. In addition, Subcontractor shall reimburse Contractor and Owner for any legal expenses incurred in enforcing the indemnity granted to them under this provision.
> Section 8. <u>Duty to Defend</u>. Subcontractor shall defend Contractor and Owner against any Claim, or any legal proceeding which may invoke the Subcontractor's obligation under Section 7 of this Agreement. The Subcontractor's duty to defend

4

> Contractor and Owner shall apply whether such claim or legal proceeding is brought only against Contractor or Owner or Contractor and Owner, either separately or jointly with Subcontractor.

(Emphasis added.)

The resolution of the claim for attorney's fees turns on the definition of "work" in the "Subcontract Agreement." Because the contract does not define "work," the court must determine the meaning that best conforms to the object of the contract.

In addition to sections 7 and 8, the term "work" appears in the following sections of the "Subcontract Agreement." "Work" is mentioned in the initial paragraph, which defines the purpose as "performing certain subcontract work under Contractor's primary contract with BellSouth," which "includes, but is not limited to, the following services: copper and fiber splicing. In Section 1(b), "[s]ubcontractor is bound to Contractor by all of the provisions in the Contract Documents that apply to the Work in the same manner that Contractor is bound to Owner under the Contract Documents." In Section 1(c), "Copies of the Contract Document applicable to the Work shall be furnished by the Contractor to Subcontractor upon Subcontractor's request. In Section 2, "Contractor may, from time to time, establish and change scheduling requirements for the completion of a part or all of the Work. Subcontractor shall comply with Contractor's requirements as to timely performance and, if necessary, employ additional crews and work overtime without additional compensation." In Section 3, "If Subcontractor is delayed in the performance of the Work by conditions that could not be foreseen by Subcontractor and that are beyond the reasonable control of Subcontractor, then Contractor will grant Subcontractor a reasonable extension of time, provided that Subcontractor

applies in writing for such an extension of time." In Section 4, "[t]he parties to this Agreement understand that Subcontractor is not subject to the control or direction of Contractor in the performance of the Work." In Section 5, "Subcontractor shall furnish the vehicles, equipment, and tools necessary to perform the Work required for full performance of this Agreement." Section 9 addresses the requirement that Subcontractor deliver a certificates of insurance demonstrating liability insurance, workers' compensation, and business auto insurance "before Subcontractor performs the Work." Section 10 states, "[o]n Monday of each week, Subcontractor is to submit an invoice for the portion of the Work completed through the preceding Saturday. . . . As a condition precedent to Contractor paying Subcontractor for the work submitted/invoice(s), Owner must first accept the Work performed by Subcontractor and pay Contractor for the Work." Section 13 explains the circumstances under which the agreement can be terminated and permits Contractor to "complete the Work or correct any deficiencies by alternate means."

The court concludes that the contract as a whole suggests that the term "work" refers to the physical task of splicing BellSouth's telephone cables. The agreement is replete with sections related to scheduling, performance, delay, providing equipment, control, completion upon termination, and invoicing for the "work" that clearly refer to the physical task of splicing. Moreover, the agreement provides that Parker is an independent contractor and makes no reference to how he performs administrative duties related to his business, except for the proof-of-insurance requirement. If Directional intended that Parker's obligation include any claim under the FLSA, it could have included that requirement in the "Subcontract Agreement," just as

BellSouth and Directional included claims under the FSLA and other statutes in the indemnity section of the "Services Agreement." See Exh. 1, section 2.44.

Thibault's allegations of violations of FLSA, breach of contract, and non-payment of wages do not include claims against BellSouth and Directional as a result of Parker's performance or nonperformance of the physical task of splicing; therefore, the legal proceeding did not invoke Parker's obligation to defend and to reimburse BellSouth and Directional for attorney's fees incurred as a result of these claims. Accordingly, there are no disputed issues of material fact, and Parker is entitled to judgment as a matter of law. The motion for partial summary judgment of BellSouth and Directional is denied, and Parker's cross-motion for summary judgment is granted.

New Orleans, Louisiana, this __6th__ day of March, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**